UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Zelaido Rivera Garcia et al.,

        Plaintiffs,

v.

Metro Gang Strike Force et al.,

        Defendants.

Civil No. 09-1996 (JNE/AJB)
ORDER DETERMINING APPEALS FROM THE DETERMINATIONS OF THE SPECIAL MASTER

This Order contains the Court's decisions with respect to each of the claims appealed from the Special Master's Determination of award pursuant to class action settlement.

## BACKGROUND

On July 1, 2005, Minnesota established a Gang and Drug Oversight Council and directed that the Council develop a strategy to "ameliorate the harm caused to the public by gang and drug crime within the state of Minnesota." Minn. Stat. § 299A.641, subdiv. 3. The Council was directed to establish multijurisdictional task forces and strike forces, to include a metro gang strike force. The Metro Gang Strike Force, a stand-alone strike force—and a defendant in this action—was duly created. Metro Gang Strike Force (MGSF or Strike Force) officers were licensed peace officers employed by an existing agency and were given statewide jurisdiction while assigned to the MGSF. The MGSF maintained its own office, but officers on tour with it officially remained employees of the department by which they were normally employed. Before July 1, 2005, when the MGSF was created, statewide gang investigation fell under the authority of the Minnesota Gang Strike Force.

The MGSF came to a screeching halt in 2009. At that time problems came to light concerning supervision, accountability, and officer conduct within the Strike Force. The problems were serious. Of particular relevance to the settlement in this action were MGSF evidence-handling practices. Issues included taking property from gang suspects and their associates without justification, failing to comply with legal requirements to give proper notice to owners of seized property, and unauthorized conversion of seized property to Strike Force and even officers' personal use. On May 20 the Minnesota Legislative Auditor, Financial Audit Division, issued a formal report. The Report, which is publically available and part of the record in this case, explained the results of the Division's special review of the MGSF for the period July 1, 2005 through March 31, 2009. The report was damning, both of the Strike Force and the Oversight Council. The night the Report was released some Strike Force personnel were observed to be shredded documents in the MGSF offices. Upon learning of the document shredding, Hennepin County Sherriff's Captain Chris Omodt, who was at that moment and for a

brief time in charge of the MGSF, took action: He immediately shut down Strike Force operations and closed the office.

In the wake of Captain Omodt's shuttering of the MGSF, the Commissioner of Public Safety and others considered reviving the Strike Force on a temporary basis pending possible reorganization and resurrection of the Strike Force. However, a significant number of police and sheriff's departments withdrew their participation and no reopening occurred. On July 17, 2009 the Commissioner, Michael Campion, formally and permanently disbanded the Strike Force.

Six days after the Legislative Auditor's Report, Commissioner Campion convened a special panel to independently investigate the conduct that gave rise to the findings of the Auditor. The Metro Gang Strike Force Review Panel completed a thorough investigation and issued its report on August 20, 2009. The Review Panel's report (Panel Report) was complimentary of the work of many of the officers who had been assigned to the MGSF. Overall, though, the Panel Report excoriated the record keeping, oversight, and some behavior and patterns of behavior in the MGSF. The Panel Report, like the Auditor's Report, is publically available and is part of the record in this case.

Virtually contemporaneously with Commissioner Campion disbanding the MGSF this putative class action lawsuit was filed. The proposed class consisted of "[a]ll persons who have been stopped, questioned, arrested, frisked, detained, searched, or any combination, by an Officer or Officers serving on the MGSF, and whose property was taken without a receipt or inventory itemization and without notification of their right to contest the forfeiture." A subclass was defined as "[a]ll persons who have been stopped, questioned, arrested, frisked, detained, searched, or any combination, based on their national origin, by an Officer or Officers serving on the MGSF, and whose property was taken without a receipt or inventory itemization and without notification of their right to contest the forfeiture." Explicitly excluded from the class were "those whose encounters with MGSF Officers resulted in their indictment or other duly filed criminal complaint by a criminal prosecuting authority."

The parties reached a negotiated settlement of the lawsuit. This Court approved the settlement, authorized a claims resolution procedure, defined the Settlement Class, and ordered public notice to all potential class members.

As was contemplated in the Settlement, class counsel received and reviewed claims received from members of the public, and then submitted them to the Special Master, Mark Gehan, along with the defendants' response and any reply. The Special Master's determinations are final unless timely appealed to this Court. In these cases the Court's determinations, made on the same record as presented to the Special Master, are final. The Court has reviewed the claimants' letters of intent to appeal and is satisfied that all were timely submitted.

**EXPLANATION OF THE COURT'S REVIEW PROCESS**

The first order of business in examining a claim file was to determine whether the claim fell within the Settlement Class definition. The Settlement Class, which was proposed by the parties and approved by the Court, is not precisely the same as the Amended Complaint's proposed class. The Settlement Class consists of:

All persons who:

(a) have been stopped, questioned, arrested, charged, frisked, detained or searched (including but not limited to persons who have had property searched or seized), or whose dwelling was searched;
(b) by a peace officer or peace officers serving on or assisting the MGSF or by a peace officer or peace officers serving on or assisting the Minnesota Gang Strike Force;
(c) in an incident where property was taken from one or more of the individuals stopped, questioned, arrested, detained or searched (or during a search and seizure of property belonging to one or more of such individuals); and,
(d) the property was taken (i) without a receipt or inventory itemization, or (ii) without notification to the property owner of his or her right to contest the forfeiture.

In order to be included in the class of persons eligible to receive compensation from this Settlement Fund the requirements of membership in the Settlement Class must be met. One requirement, set forth in subparagraph (a), is that the petitioning claimant must have been *personally* stopped, questioned, arrested, charged, frisked detained, searched, or had their dwelling searched. If the petitioning claimant did not have property taken from him or her personally, the class definition could be met if *someone* who was stopped, questioned, etc. *in the same incident* had property taken without receiving a receipt or inventory itemization or notification of the right to contest forfeiture. Class membership also requires, in subparagraph (b), that the stopping, searching, etc. have been done by an officer who was, at the time, serving on the MGSF (or, if before July 1, 2005, the Minnesota Gang Strike Force). If the searching officer was not so serving, the class definition covers the incident if the officer was *assisting* the Strike Force. Instances where the Strike Force was merely assisting another police department are not within the definition. Actions of officers who were not assigned to the Strike Force at the time of the claimed are not made class eligible by virtue of the fact that their employing *department* participated in the MGSF or that that officer was assigned to the Strike Force at some other time.

Where (a) and (b) are satisfied, (c) and (d) further define the class in terms of property seizure. This means that some apparently legitimate grievances concerning police conduct—

even unconstitutional conduct—are not compensable from the settlement fund in this action because there is no corresponding property seizure as required by (c) and (d). If a person experienced excessive use of force, for example, or deportation or verbal harassment, that alone would not place them within the settlement class. Subsection (c) requires that property have been taken. Finally, if property was taken it satisfies the definition only if it was taken without either a receipt or itemization, or notice of the right to contest forfeiture. That final subsection, (d), being introduced by the word "and," is conjunctive, meaning it is a requirement applicable to all preceding subsections. And again, if a person experiences every component of the definition except that the action was not a Strike Force action but rather the action of an officer of a department such as the Minneapolis, Edina, or St. Paul Police Department, that person cannot be awarded a portion of the settlement proceeds in this case. Claims where there was no MGSF action, yet claimants speculate (there is no actual evidence of this) that the relevant officers were somehow influenced by the Strike Force behind the scenes, or that the officers picked up bad habits during their MGSF tour which they then employed in service of their regular employment are deemed to be outside the class definition.

The Order that set out the settlement procedure required that claims be made by February 2, 2012, and also that they be submitted with a Claim Form. Thus, if a claim contained a compilation of papers but no Claim Form, or if the February 2 deadline was not met, the claim is not compensable under the terms of the Settlement. Statutes of limitation apply to virtually all litigation. The longest limitation on time of any claim pled in this case is six years. *See* Minn. Stat. § 541.05. The Court has applied that maximum time limit to all claims, even where a shorter time limit might arguably apply. The lawsuit was filed on July 30, 2009, so claims are deemed not time barred if they arise from events that occurred on July 30, 2003 or later.

Once satisfied that a claim, on its face, fell within the class, the Court examined all the documentation to evaluate trustworthiness. The information that was submitted had to be convincing enough to support a reasonable conclusion that the event happened as described. In this regard the Court employed an extremely low burden of proof, and it appears that the Special Master did as well. Independent corroborating evidence was not expected. Poor recollection of dates and details was accepted unless it cast doubt on the whole claim. Even claims that did not seem plausible on their own were accepted if they made some sort of sense when viewed in the context of the picture that emerged from other claims or established facts. The Court has employed this low threshold because it seems consistent with the spirit of the settlement and also because credibility is difficult to assess in the absence of live interaction. That being said, the settlement fund is not a free for all; *something* in the claim or supporting documents that made it plausible was required. For example, if a claim sought $1,000,000 and came from a person who has filed failed lawsuits seeking over $40,000,000 in the past 7 years, it did not meet the low threshold. In a less extreme example, if a person declared that a large sum of money was seized from him by the MGSF and that he had just received the money for his birthday, it was harmful to the claim if neither he nor his mother could pinpoint the date of the event within a 3-month

window. On the other hand, where several claimants describe an event of a type that was typical of known MGSF patterns, those claims might be credited even though there was no police report corroborating any such event and the claimants identified an officer by a name not associated with the Strike Force.

The settlement stipulated that the option to appeal a Special Master determination was available only to claimants, not to any defendant. The one-sided appeal right informed this Court's review such that no claim has been reduced on appeal. The settlement did not explicitly provide that no claimant would be made worse off for having filed an appeal, but the Court considered that to be a reasonable and fair expectation. As to the amounts of awards, the Court recognizes that awards to appealing claimants and non-appealing claimants will be paid out of the same fund, and also that less than half of the more than 200 claims have been appealed. New or raised awards, therefore, are kept roughly in line with the entire body of awards as much as possible.

A few additional notes of explanation: Except where explicitly explained, the findings of the Special Master are incorporated into this Order. The Special Master Determinations were presented claimant-by-claimant. The Court in this Order has grouped together claims receiving similar resolution, and also claims that seem to arise out of a common event, with this caveat. Many claimants are socially interconnected, and experienced incidents in the company of a fluid subset of other claimants. The Court has expended a great deal of time and energy poring over the claims and police reports in an effort to understand which claimants might have been together for various incidents. As may be expected, though, the descriptions are often quite vague and imprecise, so tying particular claimants to particular events did not prove to be an exact science. Almost all of the claims describe multiple events. One might be compensable, but others not. Or claims might fall outside the settlement class for more than one reason. In some instances the Special Master's determination is affirmed even though the Court would arrive at the same conclusion for different (or slightly different, yet overlapping) reasons. Because this Order is issued as part of a settlement, in most instances the Court has not deemed it productive to detail every point of difference.

Nowhere did the Court find evidence of an attempt at a comprehensive analysis of which claims related to which common event. Thus, when it reviewed the claim files, and saw a reference to, for example, "sunglasses," it re-reviewed all the files for which its memory or notes indicated that there might be allegations that could dovetail with the "sunglasses" incident. That laborious exercise could not be avoided, partly because the class definition, at (a) and (c), included individuals who were detained in an incident in which property was taken from someone whether they *personally* lost property or not. Although the terms of the settlement procedure required class counsel to conduct an independent review of the merits of each claim, the recommendations of counsel were not helpful. Recommendations for awards were made in situations where the claim could not conceivably fit the class definition, and there was no

5

meaningful response to MGSF counsel's analysis, including on legal points such as the applicable statute of limitations.

Claim files that were submitted to the Special Master remain sealed although all of the Determinations are publically available. With respect to claim determinations that were appealed, however, the Court has ordered that the claim and claim file be publically filed as well. The straightforward reasoning for this distinction is that privately agreeing to a resolution is one thing, but if this Court is called upon to weigh in, it will not do so without revealing the basis of its decision. Names of minors are redacted, and for the most part that includes claimants who were minors at the time of the events even if they were no longer minors at the time they filed a claim. The settlement submissions refer to minors by their initials rather than their names. The parties and Determinations also refer to adults by their initials if they were present during the events described in a minor's claim. The Court has not continued to refer to adults by their initials; overuse of initials makes understanding the claims almost hopelessly confusing, and for no good reason. An example of unnecessary redaction is that the submitted claims refer even to claimants who are *named plaintiffs* by their initials.

Each determination of the Special Master was individually filed and docketed, triggering an ECF docket number. Each appeal was also individually filed and docketed; ECF docket numbers were assigned to the appeals. For ease of reference, the Court in this Order refers to each claim by the ECF docket number assigned to the Special Master's Determination. Attached to this Order is a key showing the name of the claimant and the docket numbers associated with the Special Master's Determination and appeal, if any. Names of juveniles are redacted to reveal their initials only, but adults are included in the table by name.

## AWARDS

The following appeals concern claimants who were promised $2,500 each as a named plaintiff incentive. Those awards are affirmed even if the claimant does not receive any other compensation:

**140**, **252**, **174**

Claims **114** and **247** either did not submit the required claim form or did not submit it by the February 2 deadline.

The following claims are time barred:

**277** (events occurred in 1998; claimant is serving 264 month prison sentence)

**127** (events occurred long ago, some in the 1950's; non-time barred claim denied, *infra*)

**147** (property taken in 2001 and 2002)

6

**175** (stopped at a gas station in 2002)

**181** (one time barred claim; others denied, *infra*)

**227** (stolen guns, all but one with obliterated serial numbers recovered by St. Paul Police Department in 2001).

The following claims concern events with respect to which the Court agrees with the Special Master that there was no qualifying Strike Force involvement:

**119** (initial filing made no mention of MGSF, response does not meet threshold of persuasion on the point)

**158** (Money was taken from claimant's till at the State Fair, but it was the Ramsey County Sheriff's Department Civil Division executing a civil judgment.)

**161** (Claimant has many arrests and prosecutions and it was not possible, with any degree of confidence, to link MGSF to particular alleged improper seizure.)

**137** (First of three events was St. Paul Police Department not MGSF and other two occurred after MGSF was disbanded and were not MGSF. The Court notes that claimant asserts that he saw Strike Force insignia on officers' jackets, but the presence of insignia of the SPPD SWAT team or SPPD Gang unit might be mistaken for MGSF and the record shows contact between those units and this claimant.)

**127** (remaining non time-barred claim—or claims, it is difficult to tell—have nothing to do with the MGSF. Claimant has unfortunate issues that have brought her in contact with Health and Human Services, the Ramsey County Sheriff's Department and the St. Paul Police Department.)

**232** (Strike Force merely assisting Edina Police Department investigating a shooting at Southdale)

**174** (June 2, 2009 search warrant not by Strike Force but by Minneapolis Police Department, plus MGSF not operational at that time)

**153** (no property taken)

**152** (Robbinsdale Wiz Bang Days episode not MGSF; second episode, in which the drug ecstasy was recovered, was Minneapolis Police Department, also not MGSF)

**248**

**298** (Wiz Bang Days. Crystal Frolics, 2009 did not begin until July 23; MGSF functionally disbanded in May, formally and permanently closed July 17.)

**255** (event in 2007 involved a Ramsey County Deputy who was not assigned to MGSF until 2008)

**307** (claim has additional problems, but the identified officer was not assigned to MGSF at the relevant time)

**218** (claimant currently serving federal sentence arising out of October 3, 2005 arrest in which Strike Force merely assisting Minneapolis Police Department).

In the following claims, the Special Master was unable to conclude that there was MGSF involvement. The Court reaches a different conclusion and awards $2,000 in each:

**274** (this is in addition to $12,000 already awarded)

**249**

**251**

With respect to the following claims, the Court agrees with the Special Master that the available information is not strong enough to permit acceptance of the claimant's assertions:

**313**

**113**

**117**

**144**, **145**, **146** (all the same claimant; the $200 award in **145** is affirmed)

**154** (the Court accepts that claimant was stopped by MGSF in April of 2007 while driving on Highway 494, and that money property was seized from him. However, the Court concludes that notices of forfeiture were given, and so subsection (d)(2) of the class definition is not met.)

**161**

**181**

**235** (<u>However</u>, the Court discovered one event in this claim file that it does credit, and awards $2,000)

**238** (Claimant is serving a 275 month sentence arising out of an event in which the Northwest Metro Drug Task Force, not MGSF was involved.)

**301**

**307**

**308** (A search was indeed executed on May 25, 2004.  However, claimant was arrested and proper claim and forfeiture forms were given.  Claimant's original handwritten claim form lists "8 ounces of cocaine" among the property items taken.)

During the months of May, June and July of 2008, the MGSF engaged in a saturation effort (the "surge") that gives rise to many of the claims.  The Court affirms the Special Master's monetary awards in those claims; as previously explained, no awards have been reduced or disqualified on appeal.  Where a zero award is affirmed it is because there was no contact between the claimant and the MGSF, as, for example where a person is aggrieved by actions that were reported to them but not witnessed by them with respect to another claimant. The following awards are affirmed:

**274**

**110**

**111**

**173**

**225**

**233**

**255**

**252**

**241**

**243**

**275**

**276**

Three search warrant executions require separate attention.  One was a high risk warrant at 8442 Douglas Circle in Brooklyn Park; the Special Master's determination in claim **257** is affirmed.  Another complicated warrant was executed at 1105 Sheridan Avenue North. A number of claimants were present during the execution of that warrant and one of them received an award.  That claim was not subject to an appeal.  Without discussing whether that (non-

appealed) award was or was not justified, the Court makes the following awards in the amount of $1,500 each because it concludes that the claimants were present and not free to leave during a search warrant execution for which at least one person received compensation:

  **261**

  **264**

  **265**

  **268**

  **271**.

  Finally, a search was conducted on July 29, 2008 at a rented apartment in Crystal. The claimants in **254** (Norberto Ramirez-Jimenez) and **300** (Illiana Villa) were co-signers on the lease, but many more people than that were connected in some way to the apartment and its residents. The Court has exhausted its efforts to sort out exactly which appealing claimants were detained during the execution of the search warrant. Some claims arising from this incident are for losses that are outside the settlement class definition: loss of companionship, loss of daycare due to deportation, a broken tooth, and so on. Some claims do concern property that was taken, allegedly by MGSF personnel. However, all of the property losses except one (a $160 cash seizure) were attributable to the fact that following the search (in which a kilo of cocaine was also recovered) the property management company changed the locks on the apartment and removed all of its contents. No doubt there were losses of sentimental items when the apartment was cleaned by the caretaker. The Court agrees with the Special Master that the bulk of the property loss was attributable to private and not MGSF actions. Private counsel for this subset of claimants expresses concern that the fact that a Hennepin County lawsuit brought by some portion of this subset of claimants against the property management company was settled has caused the claims to be denied here. That is not the case. The files persuade the Court that property like furniture, baby pictures, clothing and the like were not taken by the MGSF, and consequential damages are not within the scope of the settlement even if the losses had been an outgrowth of a constitutionally infirm search.

  Nevertheless, at least one class-qualifying forfeiture did take place during the search, which led to the award in **140**. Following is a list of claims that arise from persons who in the Court's opinion were at least plausibly present and stopped in connection with the same incident as 140. With respect to each of these claims the Court awards $3,000, and increases **140** to $3,000.

  **248**

  **300**

**153**

**191**

**250**

**251** (in addition to the $2,000 ordered above)

**253**

The award in **254** is affirmed in the amount set by the Special Master.

Separately, the award in **151** is affirmed but not increased.

Payments may now be made to claimants to whom an award has been made. With this Order, the lawsuit and its settlement is concluded. The Court expresses its hope that the painful process that began in 2009 and concludes today will have an enduring and salutary effect on Minnesota's law enforcement community and the citizens it serves.

IT IS SO ORDERED.

Dated: September 4, 2012

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
